**Victor VARELA TERON,
et al. Plaintiffs,**

**v.**

**BANCO SANTANDER DE PUERTO
RICO Defendant.**

**No. CIV. 01–2577(HL).**

United States District Court,
D. Puerto Rico.

March 3, 2003.

Anibal Escanellas–Rivera, San Juan, PR, for Victor Varela–Teron, Darlene Rojas–Ithier, Conjugal Partnership Varela–Rojas, plaintiffs.

Pedro J. Manzano–Yates, Rebecca Paez–Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Banco Santander Puerto Rico, defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Defendant Banco Santander de Puerto Rico's ("Santander") Motion for Summary Judgment,[1] and Plaintiff Victor Varela Teron's ("Varela") Opposition.[2] Plaintiff alleges that he was terminated from his employment at Banco Santander because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Plaintiff also brings this claim under Puerto Rico Law 100 of June 30, 1959, as amended, ("Law 100"), P.R. Laws Ann. tit. 29 § 146, *et seq,* Law 80 of May 30, 1976, as amended, ("Law 80"), P.R. Laws Ann. tit 29 § 185(a), *et seq,* and Article 1802 of the Civil Code of the Commonwealth of Puerto Rico. For the reasons set forth below, Defendant's Motion for Summary Judgment is hereby GRANTED.

## I FACTS

As required under the summary judgment standard, the Court recites the following undisputed facts in the light most favorable to the non-movant Plaintiff, drawing all reasonable inferences in his favor. *Terry v. Bayer Corp.,* 145 F.3d 28 (1st Cir.1998).

1. Varela was born on December 27,

---

1. See Docket 17.

2. See Docket 23.

1956.[3]

2. Varela worked for Banco Popular de Puerto Rico as Information System Audit Manager before working for Santander.[4]

3. Due to a vacancy in the position of Information System Audit Manager in Santander, Varela was interviewed by Estrella Miranda, former Santander Human Resources Vice President, Madeline Davila, former Audit Director, Luis Ramos and Manuel Gutierrez from Human Resources Banco Santander–Spain.[5]

4. On November 12, 1998, Varela began working as Information System Audit Manager for Santander. Varela was 41 years old.[6]

5. According to Varela, the Information System Audit Manager was the only position that was offered to him within Santander.[7]

6. Madeline Davila, former Director of Audit of Santander, was Varela's supervisor.[8]

7. When Varela started working at Santander as Information System Manager, he was instructed to equip the communications systems, to start the recruitment of employees for the area, to train those new employees, to evaluate the auditable universe of the Bank, and to establish a working plan.[9]

8. Varela interviewed and recommended the recruitment of Jose Jimenez, Josue Santana, and Harry Hastings. According to Varela, the aforementioned recommendations were based on each candidate's academic background and experience.[10]

9. Jimenez was twenty-five (25) years old, Santana was approximately twenty-seven (27), and Hastings was thirty (30) years old at the time they started working for Santander.[11]

10. On April 7, 2001 Varela was informed that his position was eliminated. Varela was 43 years old.[12]

11. At present, the position of Manager of Information Systems Audit which was held by Varela does not exist in the Banco Santander Puerto Rico organization.[13]

## II DISCUSSION

### A. *Summary Judgment Standard*

The standard for summary judgment is straightforward and well-established. The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining if a material fact is

---

3. See Docket 17, Exhibit 1, p. 5.

4. See Docket 17, Exhibit 1, pp. 16–17.

5. See Docket 17, Exhibit 1, pp. 24–25.

6. See Docket 17, Exhibit 1, p. 22.

7. *Id.*

8. See Docket 17, Exhibit 1, pp. 27–28.

9. *Id.*

10. See Docket 17, Exhibit I, pp. 30, 33–35.

11. See Docket 17, Exhibit I, pp. 35–36.

12. See Docket 17, Exhibit I, p. 26.

13. See Docket 17, Exhibits II and III.

"genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Leary v. Dalton,* 58 F.3d 748, 751 (1st Cir.1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." *Crawford–El v. Britton,* 523 U.S. 574, 600 n. 22, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R.Civ.P. 56(e); *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court draws inferences and evaluates facts in the light most favorable to the nonmovant. *Leary,* 58 F.3d at 751 (1st Cir.1995).

**B.** *Age Discrimination Claim*

██ Under the ADEA, an employer may not "discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his age." 29 U.S.C. § 623(a)(1). In the present case Plaintiff has presented no direct evidence of discrimination. Absent such direct evidence, the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), comes into play. *Goldman v. First National Bank of Boston,* 985 F.2d 1113 (1st Cir.1993). Thus, Varela must tender enough evidence to establish a prima facie age-discrimination claim. *See Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000). An ADEA claimant must adduce evidence that (1) he was at least forty years of age; (2) his job performance met the employer's legitimate expectations; (3) the employer subjected him to an adverse employment action (*e.g.,* an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

██ Once the plaintiff meets the prima facie case, a rebuttable presumption of discrimination is triggered, and the burden of production—as distinguished from the burden of proof—shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Gonzalez v. El Dia, Inc.* 304 F.3d 63, 68–69 (1st Cir.2002). As the First Circuit specified in *El Dia,* "Once this limited burden has been met by the defendant-employer, the presumption which attended the prima facie case vanishes and the claimant must adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action." *Id.* The plaintiff may meet the burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the factfinder in turn may, but need not, infer the alleged discriminatory animus. *Id* (citing

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

In our present case, Santander does not contest that Varela meets the first three prongs of the prima facie case:

1) Varela falls within the protected group under the ADEA, since at the time of his layoff he was 43 years old.

2) Varela met his employer's legitimate job performance expectations.

3) Varela was terminated.

Notwithstanding, Santander maintains that Varela fails to meet the fourth prong:

4) Varela is unable to prove that Santander retained an employee outside the protected class in the position of Information Systems Manager since said position was eliminated as part of a reorganization that took place in the Systems Audit Division of Santander.

According to Santander, it has been conducting changes through many of its banks, and it decided that the auditing services of the Systems Division would be performed by the Division of Internal Audits of Santander Central Hispano ("SCH") in Madrid, Spain.[14] SCH decided that, in Puerto Rico, the direction of the Systems Audit Division would be conducted by the Internal Audit Division in Madrid.[15] As a consequence, the position of Manager of Information Systems Audit, occupied by Varela, was eliminated in April 2000.[16]

After the elimination of Varela's position, Santander's Systems Audit Area was composed of Jose Jimenez, Junior Auditor, Josue Santana, Junior Auditor, and Harry Hastings, Senior Auditor. These employees had reported to Varela, prior to his termination, and would now communicate with the Internal Audit Division of SCH in Spain.[17] Plaintiff had recruited and trained these employees. After the elimination of Varela's position, Hastings resigned to his position in September 2000, and Santana resigned on April 2001.[18] Santander did not recruit any employee for the vacancies left by Hastings and Santana in light of the decision to centralize the Puerto Rico Division with that in Spain.[19]

According to Varela, on October 1, 2000, Santander placed an advertisement looking for candidates to fill his position. Plaintiff contends that although the advertisement in the newspaper searched for a System Senior Auditor,[20] Santander had changed the position's name from System Audit Manager to System Senior Auditor. Defendants have demonstrated that Plaintiff's allegation is unfounded. Varela admitted in his deposition that while he had similar duties to his subordinates, he also had a wider range of responsibilities. Moreover, although the advertisement was placed, no one was hired for the position and any further posting was cancelled.[21]

■ Plaintiff claims that upon his termination, he was replaced by Hastings, who was 30 years old at the time, and allegedly

---

14. See Docket 17, Exhibit III, Sworn declaration of Laura Rivera, Compensations and Benefits Sub-manager for Santander Puerto Rico.

15. *Id.*

16. *Id.*

17. See Docket 17, Exhibit II, Sworn Declaration of Ramon Sanchez, Director of Audit of Santander Puerto Rico.

18. See Docket 17, Exhibit II.

19. *Id.*

20. See Docket 23, Exhibit XI.

21. See Docket 29, Exhibit I.

received a pay increase upon Varela's departure. Although Plaintiff admits that they had different titles, he argues that Hastings was basically performing his prior job. The Court finds Varela's contention unpersuasive. First, Hastings remained in the position of Senior Auditor, and second, the position of Senior Auditor and Manager involved different functions. Varela admits that his position as Manager included supervisory functions which lacked in the Senior Auditor position. Moreover, a discharged employee has not been replaced when another employee is assigned to perform his or her duties, in addition to other duties, or when the work is redistributed among existing employees already performing related work. *Seda Soto v. Corp. of the Presiding Bishop*, 73 F.Supp.2d 116 (D.P.R.1999). Hastings voluntarily resigned in September 2000, and Defendant did not recruit any employee for Hasting's vacancy.[22]

Varela claims that when Santander eliminated his position, it should have offered him another position within the bank. He argues that there were vacant positions in the audit department at Santander for which he qualified, but when he requested such positions, he was denied any placements. Plaintiff specifically refers to a vacant position for Senior Auditor, available at the time of his discharge. Varela claims that Santander violated its own company policy which is to transfer an employee to be dismissed to another position if there is a vacancy in the same *occupational classification* of the employee to be terminated. Defendant has clearly demonstrated that at the time of Varela's dismissal there was no other Information System Audit Manager position available. Furthermore, the only available position which Varela points to is that of Senior Auditor. An employer does not have the duty to offer a transfer or relocation to another position to a person affected by a layoff. *Holt v. The Gamewell Corp.*, 797 F.2d 36, 38 (1st Cir.1986). If more is to be said, employers conducting a reduction in force face no obligation to offer "lower echelon, poorer paying jobs in the restructured enterprise" to all older employees. *Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 539 (1st Cir.1996).

In his Opposition, Varela points to another allegedly vacant position which he claims he was qualified for at the time of his dismissal. Varela maintains that a thirty year old Senior Auditor, Arelis Tejada, was promoted to a managerial position with the same job title and/or classification as that occupied by Plaintiff. However, as demonstrated by Santander, Tejeda was promoted to Operations Audit Manager in January 2000, three months before Varela's termination.[23] Accordingly, this position was not vacant at the time of Varela's dismissal.[24]

It appears from the record that Plaintiff fails to meet the fourth element of his prima facie case, namely—that Santander had a continuing need for the services provided by the position of Information System Audit Manager. Even assuming, *arguendo*, that Plaintiff has met the fourth element of his prima facie case, the Court would still conclude that Plaintiff is unable to demonstrate that age animus was the real reason for his termination.

---

**22.** See Docket 17, Exhibit II.

**23.** See Docket 29, Exhibit II, Declaration under perjury by Laura Rivera.

**24.** Defendant also presented evidence demonstrating that Tejada had more seniority in Santander than Varela, and she was more qualified for the position of Operations Audit Manager because, unlike Varela, she is an accountant. See Docket 29, Exhibit II.

Santander has plainly met its burden of production by identifying a nondiscriminatory basis for Varela's discharge, *i.e.,* the elimination of his position due to a reorganization. Santander has presented evidence that it has been conducting changes in the Audit Division, and the position of Information System Audit Manager was no longer needed in Santander Puerto Rico. Moreover, after the elimination of Varela's position, two other auditors resigned, one in September 2000, the other in April 2001, and Santander did not recruit any employees for these vacancies. Defendant explains that it chose not to fill the positions in light of the decision to centralize the Puerto Rico division with the Systems Audit Division in Spain.[25]

Having articulated a legitimate non-discriminatory reason for Varela's discharge, the burden has shifted back to Varela to prove that the nondiscriminatory reason assertedly relied upon by Santander was merely a pretext, and that age was the reason for his termination. *El Dia,* 304 F.3d at 69. Varela must do more than merely cast doubt on the rationale proffered by Santander. Instead, the evidence must be of such strength and quality as to permit a reasonable finding that the employer's decision to terminate the employee was motivated by age. *Id.* The only evidence that Plaintiff has presented concerns positions in the Audit division. Plaintiff has presented evidence that when he was terminated there were vacant positions which were later filled. However, Plaintiff has presented no evidence whatsoever of any age-based animus on the part of Defendant. Plaintiff has presented no discriminatory remarks or any other shred of evidence from which a rational fact finder could infer the requisite discriminatory intent. Accordingly, the Court concludes that Plaintiff has failed to present sufficient evidence from which a rational fact finder could infer both that Defendant's legitimate business reason for terminating Varela was a pretext, and that the real reason for his termination was age-based animus. In light of this conclusion, the Court **Grants** Defendant's Motion and dismisses Plaintiff's ADEA claims.

## C. *Puerto Rico Law 100 and Law 80*

Varela also brings an age discrimination claim under both Law 100 and Law 80. Defendant challenges this claim and proffers two arguments. Relying on the recent district court case *Morales v. Nationwide Insurance Co.,* 237 F.Supp.2d 147 (D.P.R.2002), Defendant first argues that the burden-shifting framework of Law 100 in correlation with Law 80 is unconstitutional because it violates Defendant's due process. Second, with regard to the merits, Defendant maintains that Plaintiff's claim must fail because he was dismissed for just cause and he has presented no proof of discrimination.

### 1. **Law 100**

Law No. 100 is the Puerto Rico equivalent of the federal ADEA.[26] It provides a cause of action in favor of those persons who suffer discrimination in their employment, among others, because of their age. While similar to federal em-

25. See Docket 17, Exhibits II and III.

26. Law No. 100, in pertinent part, provides: "Any employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank, conditions or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employment opportunities, or to affect his status as employee, on the basis of ...age... shall incur civil liability... and [] he shall also be guilty of a misdemeanor." P.R. Laws Ann. tit. 29 § 146.

ployment law in various respects, Law 100 has a burden-shifting regime that is distinct in various respects. *Soto v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints,* 73 F.Supp.2d 116, 130 (D.P.R.1999). In particular, when a plaintiff meets his initial burden, as described below, the Law 100 presumption of discrimination is triggered. The employer then has a burden, not only of production, but of persuasion as well. *Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.,* 152 F.3d 17, 27 (1st Cir.1998).

Much like a Title VII action, under Law 100 the employee bears the initial burden of presenting sufficient, probative evidence that he was discharged without just cause, which entails proving three elements: (1) that he or she was fired; (2) that the dismissal was without just cause [27]; and (3) some basic fact substantiating the type of discrimination alleged. *Diaz Fontanez v. Wyndham Hotel Corp.,* 2001 WL 1346759 at *9 (P.R.); *Hernandez v. Trans Oceanic Life Insurance,* 2000 WL 943869 at *10 (P.R.); *Belk Arce v. Martinez,* 146 P.R. Dec. 215, 230–31 (1998). By proving these elements, the employee has shown that the employer lacked "just cause" to discharge or take other adverse action against him or her. Moreover, such proof establishes the basic facts which trigger the Law 100 presumption. *Diaz Fontanez,* 2001 WL 1346759 at *9. In order to rebut the Law 100 pre-

sumption, the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory age animus. *Ibanez Benitez v. Molinos de P.R., Inc.,* 114 P.R. Dec. 42, 53 (1983).

While the First Circuit in *Alvarez–Fonseca* refers to the Law 100 burden-shifting scheme as described above, other First Circuit opinions have adopted a modified framework. *See e.g., Baralt v. Nationwide Mut. Insurance Co.,* 251 F.3d 10 (1st Cir.2001); *Cardona Jimenez v. Bancomercio de Puerto Rico,* 174 F.3d 36, 42 (1st Cir.1999). According to the First Circuit in *Alvarez–Fonseca,* "the Law 100 presumption of discrimination is triggered when it is shown that the employer lacked "just cause" to discharge or take other adverse action with regard to the employee." *Id.* at 28. *Alvarez* incorporates Law 80 in its Law 100 analysis for purposes of defining "just cause". Although the Court in *Alvarez* was not faced with a Law 80 claim, it enters into a discussion of Law 80's burden-shifting scheme [28] which has led the Court in subsequent opinions to adopt a modified framework of a plaintiff's initial burden under Law 100. For example, while citing to *Alvarez–Fonseca,* the First Circuit in *Cardona Jimenez* describes a plaintiff's initial burden under Law 100 as follows:

Under Law 100, the plaintiff has two requirements to establish a prima facie case:

> the evidence that he was actually or constructively discharged. The burden then shifts to the employer to prove by a preponderance of the evidence that it had just cause to dismiss the employee. If the employer fails to make this showing, the Law 100 presumption of discrimination is triggered, shifting the burden to the employer of proving by a preponderance of the evidence that the otherwise-unjustified dismissal was not motivated by discriminatory animus. *Id.* at 28.

---

**27.** The Supreme Court of the Commonwealth of Puerto Rico determined that, because Law 100 did not define the term "just cause," the term's definition would be sought in an analogous statute—the Puerto Rico Law on Unjustified Dismissals, Law 80 of May 30, 1976. *See Baez Garcia v. Cooper Labs., Inc.,* 120 P.R. Dec. 145, 155 (1987).

**28.** According to *Alvarez–Fonseca:*
[T]he Law 80 presumption is triggered when the plaintiff alleges unjustified dismissal and proves by a preponderance of

1) she must demonstrate that she was actually or constructively discharged; and 2) she must allege that the decision was discriminatory. Once this minimal showing has been established, the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions. *Cardona Jimenez*, 174 F.3d at 42 (citing *Alvarez–Fonseca*, 152 F.3d at 28).

While the Court in *Cardona Jimenez* is referring to Law 100 above, it has cited the portion of *Alvarez–Fonseca* referring to Law 80. *See Alvarez–Fonseca*, 152 F.3d at 28. Hence, the above citation refers to a plaintiff's prima facie case under Law 80 not Law 100. Citing to *Cardona*, the First Circuit in *Baralt v. Nationwide Mut. Insurance Co.*, 251 F.3d 10 (1st Cir. 2001) refers to the same Law 100 prima facie case.

Not all post-*Alvarez* First Circuit cases have adopted the *Cardona* interpretation of *Alvarez*. In fact, the First Circuit in *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727 (1st Cir.1999), states: "Under Law 100 . . . once the employee triggers the act's protections by showing that his discharge, constructive or otherwise, was not justified, the employee enjoys a presumption that he or she has been the victim of discrimination and the burdens of both production and persuasion shift to the employer." *Id.* at 734 (citing *Alvarez–Fonseca*, 152 F.3d at 27). The Court in *Ramos* specifies that the employee must *show*, not only *allege*, that his discharge was not justified, in order to meet his initial burden under Law 100. This *Ramos* reading of *Alvarez* is consistent with the Supreme Court of Puerto Rico's description of a plaintiff's initial burden under Law 100, as presented in *Diaz Fontanez*. Moreover, as the First Circuit stated in *Alvarez*, "the burden of proof on the ultimate issue of discrimination remains with the plaintiff, as in any other civil case." *Id.* at 28.

## 2. Law 80

Puerto Rico Law 80 of May 30, 1976, is the Commonwealth's law on wrongful discharge. If an employee brings a claim for wrongful discharge pursuant to Law 80, the employer has the burden of proving that the dismissal was justified. According to Law 80, "In every action instituted by an employee claiming the benefits [of Law 80] the employer is bound to plead in his answer to the complaint, the facts that led to the dismissal, and prove that it was justified . . ." P.R. Laws Ann. tit. 29 § 185k. Accordingly, Law 80 establishes a presumption of unjust dismissal against employers. *Diaz Fontanez*, 2001 WL 1346759 at \*9; *Belk Arce*, 146 P.R. Dec. at 230–31; *Delgado Zayas v. Hosp. Interamericano*, 137 D.P.R. 643 (1994).

In *Baez Garcia v. Cooper Labs., Inc.*, 120 P.R. Dec. 145, 155 (1987), the Supreme Court of the Commonwealth of Puerto Rico determined that, because Law 100 did not define the term "just cause," the term's definition would be sought in Law 80. According to Law 80, a dismissal without just cause is "[a] discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment." 29 L.P.R.A. § 185b. Law 80 further provides an illustrative list of reasons that are deemed to constitute "just cause" for a dismissal. With regard to circumstances not directly attributable to the employee, Law 80 considers as just cause for discharge "the full, temporary or partial closing of the operations of the establishment; technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment;" and "reductions in employment made necessary by a reduction in the anticipated or prevailing volume of

production, sales or profits at the time of the discharge." 29 L.P.R.A. § 185b(d),(e) and (f). Law 80 further provides that in cases of discharges or lay-offs under subsections (d)(e) and (f), the employer should follow seniority (meaning seniority with the employer) within the occupational classification subject to the lay-off. However, if there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared, these efficiency or capacity factors shall prevail in the decision. 29 L.P.R.A. § 185c.

### 3. Claims under both Law 100 and Law 80

▇▇ According to the Supreme Court of Puerto Rico in *Diaz Fontanez,* an employee who brings a claim under both Law 100 and Law 80 must allege wrongful discharge, prove that he was dismissed without just cause, and show some basic fact substantiating the type of discrimination alleged. *Diaz Fontanez,* 2001 WL 1346759 at *12.

Defendant refers to *Morales v. Nationwide Insurance* for the proposition that the burden shifting framework of Law 100 in correlation with Law 80 is unconstitutional because it violates Defendant's due process. The Court notes that the *Morales* "holding is limited to Law 100's burden shifting framework in correlation with a Law 80 claim, as applied to Defendant in [the *Morales* ] case, and as interpreted and applied by the Puerto Rico Supreme Court in *Diaz Fontanez.*" *Morales,* 237 F.Supp.2d at 162. Nevertheless, having brought this case to the Court's attention, the Court examines Defendant's argument, and provides a brief discussion of the *Morales* case.

The court in *Morales* reads *Diaz Fontanez* as stating that the Law 100 presumption of liability is activated once the employee merely *alleges* unjustified dismissal

and proves *any* of the eligible "basic facts." *Morales,* 237 F.Supp.2d at 154 (citing *Diaz Fontanez,* 2001 WL 1346759, at *12). According to *Morales,* "applying the Puerto Rico Supreme Court's jurisprudence to gender discrimination claims, proving this 'basic fact' means proving that Plaintiff is a woman or that she was actually fired. *Cf. Diaz Fontanez,* 2001 WL 1346759, at *12." *Morales,* 237 F.Supp.2d at 159. The court in *Morales* further suggests that "Plaintiffs do not even have to produce evidence that their employers did anything at all, be it legal or illegal; they just have to show that they belonged to a protected class and pray unjustified dismissal (pray, not proof)." *Id.* Comparing the McDonnell Douglas prima facie case for Title VII and ADEA claims, *Morales* states that Law 100 "requires less proof— a mere allegation and proof of gender or an actual firing—to shift a more demanding burden." *Id.* The court concludes, "there is no due process in such an arbitrary legal framework." *Id.*

This Court adopts an alternate reading of *Diaz Fontanez.* Specifically, this Court interprets the term "basic facts" in *Diaz Fontanez* differently than *Morales.* When the Court in *Diaz Fontanez* specifies that the plaintiff must "allege just cause" and "prove certain basic facts," it refers to the requirement of proving two "basic facts": (1) that the employee was fired without just cause, and (2) some basic fact substantiating the type of discrimination alleged (*e.g.,* that he is over forty for an ADEA claim). The *Morales* interpretation of a "basic fact" is any of the four elements of the McDonnell Douglas test. Accordingly, *Morales* concludes that Law 100's presumption is activated by merely alleging unjustified dismissal and proving any of the four elements of the McDonnell Douglas test. However, when *Diaz Fontanez* says that the plaintiff can use any of the

four elements of the McDonnell Douglas test as a "basic fact," it refers to the basic facts needed to substantiate the type of discrimination alleged. *See Id* at *12. For example, an ADEA claimant might choose to present any of the following "basic facts" to substantiate an age discrimination claim: (1) he is over forty or (2) he was replaced by a younger person. Either of these two facts would serve to substantiate his age discrimination claim.

This Court does not interpret *Diaz Fontanez* as stating that in suits arising under Law 100 and Law 80, Law 100's presumption of liability is activated once the employee merely *alleges* unjustified dismissal and proves certain basic facts of the discrimination claim such as *any* of the four elements of the McDonnell Douglas test. *Morales*, 237 F.Supp.2d at 154. Instead, this Court interprets *Diaz Fontanez* as specifying that a plaintiff must not only allege unjustified dismissal, but must also present proof to this effect, in order to trigger the Law 100 presumption of discrimination and shift the burden of proof to defendant.

 In sum, to activate the Law 100 presumption of discrimination, a plaintiff must prove three elements: (1) that he or she was fired; (2) that the dismissal was without just cause; and (3) some basic fact substantiating the type of discrimination alleged. *Diaz Fontanez*, 2001 WL 1346759 at * 9 (citing *Hernandez v. Trans Oceanic Life Insurance*, 2000 WL 943869 at *10 (P.R.); *Belk Arce v. Martinez*, 146 P.R. Dec. 215, 230–31 (1998)). Presenting such proof establishes the basic facts which trigger the presumption. *Id.* The *Diaz Fontanez* Court explains that if the plaintiff does not present sufficient evidence to sustain his or her allegations, the defendant is in no duty to defend itself. *Id.* The Court specifies that "the mere allegation of a basic fact, without having been duly established, does not activate a presumption that permits the inference of a presumed fact." *Diaz Fontanez*, 2001 WL 1346759, at *11 (citing *McCrillis v. Autoridad de las Navieras de P.R.*, 123 D.P.R. 113, 141 (1989)). The plaintiff carries the burden of proof, as in any other civil case, to demonstrate that his dismissal was discriminatory. If the plaintiff "establishes the basic facts which activate the presumption, namely—that plaintiff was fired, without just cause, and he substantiates the type of discrimination alleged," then the presumption relieves the plaintiff's burden. *Diaz Fontanez*, 2001 WL 1346759, at *12. (Court's translation). In other words, the plaintiff must not only allege, but also establish the basic fact that he was fired without just cause in order to trigger the Law 100 presumption. *See Id.; see also Hernandez*, 2000 WL 943869 at *10; *Belk*, 146 P.R. Dec. at 230–31 (1998).

### 4. Analysis—Law 100 and Law 80

 In our present case, Varela is able to meet his initial burden under Law 80. He has alleged that he was dismissed without just cause, and he has proven that he was dismissed. Accordingly, the burden of proof shifted to Santander to rebut the presumption of unjust dismissal by proving that Varela's discharge was justified. Santander has effectively met this burden by demonstrating that the decision to eliminate Varela's position was a legitimate business decision related to the proper and efficient operation of Santander's activities. The centralization of the System Audit Division with the Division of Internal Audit of Santander Central Hispano in Madrid, Spain, and the consequent elimination of the Information Systems Audit Manager position, are the reasons for Varela's termination. Dismissals which take place due to technological changes or reorganizations constitute just cause under Law 80.

P.R. Laws Ann. tit. 29, § 185b (e)(f). Given this evidence, no reasonable jury could find that Santander did not have just cause to dismiss Varela. Accordingly, Varela is unable to meet his initial burden under Law 100.

Furthermore, as discussed with Varela's ADEA claim, no reasonable jury could find that Varela carried his burden of proof on the ultimate issue of discrimination. Hence, even if the Court would deem that Varela's termination was unjustified, Santander has met its burden of proving that the decision to lay him off was not motivated by discriminatory animus. Therefore, Defendant's Motion for Summary Judgment dismissing Plaintiff's Law 100 is **GRANTED.**

**5. Analysis—Law 80**

As discussed above with respect to Varela's Law 80 claim, Santander proved that his discharge was with just cause. Plaintiff was dismissed as a result of the elimination of his position as an Information Systems Audit Manager due to the centralization of Santander's auditing services. When an employee is terminated for reason of a reorganization, the employer has the duty to retain those employees of greater seniority on the job with preference, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification. P.R. Laws Ann. tit. 29, § 185c. Plaintiff claims that he should have been retained in the position of Senior Auditor, and argues that this position is in the same occupational classification as Audit Manager. As the Court previously discussed, this argument is unpersuasive. Aside from having different titles, and involving different job functions, the Manager position included supervisory functions which lacked in the Senior Auditor position. Moreover, Santander had no duty to place Varela in the Operations Audit Man-

ager position, occupied by Tejada, because she had more seniority and was more qualified than Varela for the position. Accordingly, there was no job available within his occupational classification at the time Varela was dismissed. Therefore, Defendant's Motion for Summary Judgment dismissing Plaintiff's Law 80 claim is **GRANTED.**

**6. Claims under the Commonwealth's Constitution and Article 1802**

Defendant requests the dismissal of Plaintiff's claims under the Commonwealth's Constitution and Article 1802 of the Puerto Rico Civil Code. In his Opposition, Plaintiff fails to oppose Defendant's request, and he presents no arguments in support of these claims. Accordingly, the Court concludes that Plaintiff has waived these claims, and they are hereby **DISMISSED.**

GRANTED in its entirety.

**IT IS SO ORDERED.**

### JUDGMENT

The Court having entered an opinion and order on this same date, judgment is hereby entered dismissing this case.